## DOWNER v. HOLGATE.

PARTNERSHIP.

1. In an action by a judgment creditor to subject to the judgment lien certain real estate standing in the name of the wife of the debtor, the plaintiff in error, who was made a defendant in the action on account of owning an undivided interest in the property, sought by cross-petition to have the interest of the wife of said judgment debtor decreed to be the property of a partnership alleged to have formerly existed between plaintiff in error and said judgment debtor, said cross-petition alleging an indebtedness due to the partnership from said debtor. *Held,* that the evidence sustained the finding that the judgment debtor had no interest in the proprety, and that the interest held in the name of the wife was at all times her property, and sustained the judgment in her favor as against the claims of plaintiff in error; and *held, further,* that the transaction, out of which arose the indebtedness claimed to be owing to the alleged partnership, was not connected with such partnership.

[Decided March 16, 1903.]                    (71 Pac., 1135.)

ERROR to the District Court, Sheridan County, HON. DAVID H. CRAIG, Judge of the Third Judicial District, presiding.

The receiver of the First National Bank of Deming, New Mexico, brought an action against Henry Holgate, Roannah M. Holgate and George W. Downer, in the District Court of Sheridan County, to enforce an attachment lien against certain real estate, claimed to belong to Henry Holgate, in order to satisfy a judgment obtained by the said receiver against the said Henry Holgate.

The petition alleged substantially the following facts: That the said bank was incorporated under the laws of the United States, and became insolvent; that plaintiff was duly appointed receiver; that he took possession of all the assets of the corporation for collection and distribution as provided by law; that on November 13th, 1893, he duly recovered judgment against Henry Holgate for the sum of $4,483.53 and $488.84 attorney's fees, together with interest and costs of suit, on which judgment $420 was paid June 30, 1895; that thereafter the plaintiff duly recovered judgment in the District Court of Sheridan County against Henry Holgate in attachment proceedings theretofore begun in said action, on the aforesaid judgment, in which action certain real estate described in the petition was attached and levied upon to satisfy the said judgment; that the defendant Roannah Holgate is and was for many years last past the wife of Henry Holgate; that on the 8th day of March, 1893, the said Henry Holgate, for the purpose of defrauding his creditors, and without any valuable consideration, entered into a collusion with his wife, and in by said conspiracy said Henry Holgate did purchase an undivided one-half interest in and to certain real estate, described in the petition, situate in Sheridan, Wyoming, and fraudulently caused the said property to be conveyed to his wife, although she in truth and fact paid no consideration therefor, and that said Henry Holgate, with like fraudulent intent, and with the consent and approval of his wife, did

purchase an undivided one-half interest in certain other
real estate, described in the petition, situate in said Town
of Sheridan, causing the deed to be made out in the name
of Downer & Holgate; that the property attached in the
aforesaid suit being the same as that held in the name of
Roannah M. Holgate and Downer & Holgate; that said
Henry Holgate is a non-resident of Wyoming, and the
judgment rendered in the aforesaid attachment proceed-
ings was based upon the said attachment and was a pro-
ceeding against the property of said Henry Holgate, no
personal service having been had on him in said attachment
proceedings, and that plaintiff can only collect said judg-
ment from the sale of the said attached property; that the
right, title and interest of said Roannah M. Holgate in the
aforesaid property is fraudulent and fictitious, and the con-
veyance was so made in order to prevent plaintiff collecting
his judgment against Henry Holgate; that plaintiff cannot
proceed to sell said attached property until said convey-
ances are set aside; that said Roannah M. Holgate is
trustee for defendant, Henry Holgate; that the facts con-
cerning the said fraudulent conveyances were not known
to plaintiff until the year 1896; that George W. Downer
has, or claims, some interest in said real estate, which
plaintiff avers is subject to the interest of plaintiff. Plain-
tiff prayed judgment that Roannah M. Holgate and George
W. Downer may be compelled to disclose their interest, if
any, to said real estate, that the same may be adjudged
inferior to plaintiff's lien; that Roannah M. Holgate be
adjudged to hold said real estate in trust for Henry Hol-
gate, and for the satisfaction of plaintiff's claim; that said
real estate be sold to satisfy plaintiff's claim.

George W. Downer filed his answer and cross-petition, in
which he substantially alleged the following: That, on
the 25th day of November, 1892, Henry Holgate and him-
self entered into an agreement to form a partnership in
the business of buying and selling neat cattle and conduct-
ing a meat market in Sheridan, Wyoming, the terms of

agreement being in substance, that each were to contribute property and money in equal proportions; that each were to devote their time and attention to said co-partnership business; that each were to equally share profits and losses; that the firm name was to be Downer & Holgate; that he and Henry Holgate then entered upon and carried on said co-partnership business until about the 2d day of August, 1893, at which time said co-partnership was dissolved, and full settlement made between them, except as to certain real estate and personal property; that on said date he, Henry Holgate and John A. Raithel entered into the same business, under the firm name of Downer, Raithel & Company, which co-partnership was continued until March 6th, 1894, at which time said co-partnership was dissolved; that at said time he and Henry Holgate entered into a co-partnership in the same business, under the firm name of Downer & Holgate, at the same place as aforesaid, and under the same terms as hereinbefore mentioned; that they continued to carry on such business until about the 20th day of July, 1896, at which time Henry Holgate departed from Sheridan County, Wyoming, and has ever since remained therefrom, and after diligent search cannot be found, but that said partnership has never been dissolved; that during the existence of said co-partnership between him and Henry Holgate the said Henry Holgate has from time to time withdrawn from and applied to his own use large sums of money belonging to said firm, contrary to the terms of said partnership and without the knowledge or consent of said Downer, greatly in excess of the amount to which he was entitled under the terms of said partnership or otherwise, and fraudulently concealed the same from said Downer, and has converted the same to his own use, to the damage of Downer in the sum of $1,700; that about the 26th day of July, 1896, said Downer discovered that Henry Holgate was indebted to said firm of Downer & Holgate to a large amount, to-wit, $1,700, by reason of his misappropriations of the moneys belonging to the said firm; that on the 25th

day of November, 1892, the said firm of Downer & Holgate purchased from C. B. Stroud certain personal property; that said firm of Downer & Holgate paid for said property the sum of $800, and that said firm still owns all of it, except the live stock, which were sold and disposed of in said co-partnership business; that the defendant, Henry Holgate, has received the sum of $1,700 in excess of his proportion of the profits, money and property of the said partnership; that on March 8th, 1893, the said firm of Downer & Holgate purchased certain real estate situate in Sheridan County, and paid therefor the sum of $1,940 out of the moneys belonging to the said firm; that the deed conveyed the said real estate to said Downer and Roannah M. Holgate; that on February 20th, 1895, the said firm of Downer & Holgate purchased certain other real estate, situate in the said County of Sheridan, and paid therefor the sum of $500 out of the moneys of the said firm; that the deed conveyed the said property originally to George Downer and Henry Holgate, and that after said deed was so made, and before said deed was filed for record, the name of Henry Holgate in said deed was, without the knowledge or consent or connivance of Downer, changed to Roannah M. Holgate; that on December 5th, 1894, said firm purchased certain other real estate, situate in the said County of Sheridan, and the said firm paid therefor $550 out of the moneys of the firm, and the deed was made to the said Downer & Holgate; that all and singular the said real estate was purchased with the moneys of said firm, and that Roannah M. Holgate in no manner contributed anything toward the purchase of the same; that said Roannah M. Holgate has no interest in the said property, but that all of said real and personal property belongs to the said firm; that by reason of the facts Downer is entitled to a decree, adjudging and decreeing that the said Roannah M. Holgate holds the title to the first above described real estate for the use and benefit of said firm; that the real estate and all thereof be adjudged to be the property

of the said firm; that any interest or title which the plaintiff may have to the said real estate or any part thereof, if any, is subject to that of the said Downer. Prayer of said Downer in his answer and cross-petition in effect was that all the real estate be adjudged the property of the firm, that the property be sold, the partnership be dissolved, and the proceeds be applied first to the satisfaction of the debts of the firm, and the remainder divided between Downer and Henry Holgate, according to their respective interests under the partnership agreements.

On April 24th, 1899, Roannah M. Holgate filed her amended answer to the petition of plaintiff, which in effect consists of a general denial, the statute of limitations, and an attack upon the jurisdiction of the court in the rendition of judgment in the attachment proceeding.

On the 11th day of July, 1899, the plaintiff filed a reply to the amended answer of Roannah M. Holgate, denying each and every allegation therein; and on the same date filed a reply to the answer and cross-petition of Downer, denying generally the allegations therein, except admitting the allegations of co-partnerships and purchase of the property, as alleged by Downer.

On January 27th, 1900, Roannah M. Holgate filed her answer and cross-petition in the said cause to the answer and cross-petition of Downer, in which she substantially pleads the following: That she denies that Downer and Henry Holgate entered into a co-partnership agreement on November 25th, 1892; denies that Henry Holgate ever agreed to contribute any property to any proposed partnership, and denies that the profits and losses were to be divided between him and Downer; that she denies that said Downer and Henry Holgate ever entered into a partnership at any time, and denies that they dissolved said co-partnership on August 2, 1893, but avers that she and Downer dissolved a co-partnership about said time, and avers that Henry Holgate had no interest in said co-partnership and was not a partner therein; that she denies that Raithel,

Downer and Henry Holgate ever entered into a co-partner-ship of any kind; that she denies that Downer and Henry Holgate entered into a co-partnership on March 6th, 1894, or at any time, and denies that said co-partnership was continued until July 20th, 1896, or until any other date; that she denies that Henry Holgate ever withdrew any moneys from the said firm, as alleged in Downer's answer and cross-petition, and denies that he converted $1,700 of the moneys belonging to the said firm to his own use, or any sum whatever; that she denies that Henry Holgate was ever indebted to the firm of Downer & Holgate, and denies that he ever misappropriated any moneys of the said firm; that the personal property mentioned in Downer's answer and cross-petition was purchased by her and Dow-ner under the firm name of Downer & Holgate, and still be-longed to them, each owning an undivided one-half interest therein; that she denies each and every allegation of the said Downer's answer and cross-petition not admitted; that all of the real estate was purchased by her and Downer, each owning an undivided one-half interest therein; that she denies that the name of Henry Holgate was erased in one of the deeds and her name inserted in place thereof, and denies that any change was made without the consent of Downer in said deed; that she contributed large sums of money to the firm of Downer & Holgate; that she paid and contributed one-half of the consideration of each and all of the tracts of said real estate, and that she is the owner of one-half of the right, title and interest therein and of the personal property mentioned in Downer's cross-petition; that she denies that the firm of Downer & Holgate, consist-ing of herself and Downer, has any interest in said prop-erty; that said firm has long since been dissolved and the business wholly and completely settled and disposed of; that each are the owners of a half interest, separate and apart from said partnership. She also filed a cross-petition, asking that the property in her name be decreed to be her property.

. Upon the evidence, the court found generally for the defendant, Roannah M. Holgate, and against the plaintiff and Downer; that she was the owner of an undivided one-half interest—and was at all times—and entitled to possession, free and clear of all claim or claims of either plaintiff or Downer, in the property involved in the suit. The court further found that Downer was the owner and entitled to the possession of the remaining undivided one-half interest in said property; and that Roannah M. Holgate was a member of the firm of Downer & Holgate, and of the firm of Downer, Raithel & Company, and that Henry Holgate was never a member of any of the said firms.

And thereupon it was adjudged that the title to the undivided one-half interest in said real estate be quieted in defendant, Roannah M. Holgate, and that she have immediate possession thereof; that Downer was the owner of and entitled to the possession of the other undivided one-half interest in said real estate; that the plaintiff take nothing by the action, and that Downer take nothing by his action; that the petition of plaintiff and the cross-petition of Downer be dismissed, and that Roannah M. Holgate recover her costs.

Downer filed his motion for a new trial, setting up various grounds for a new trial, arising from the introduction of the evidence, and as to the sufficiency of the evidence to support the findings and judgment, which motion was overruled, and now prosecutes this proceeding in error, assigning as error the overruling of his motion for a new trial.

*E. E. Enterline,* for plaintiff in error.

The court erred in overruling Downer's motion to suppress the deposition of George H. Bloom. The exceptions to the said deposition and motion to suppress the same are based on the fact that the interrogatories were prepared by counsel for Roannah M. Holgate, and forwarded to the notary who took the deposition, and that the notary propounded the same to Bloom. The exceptions and motion to

suppress were supported by affidavit, and the deposition showing that the interrogatories were prepared. Depositions can only be taken upon written interrogatories when the court appoints a commission for such purpose. (R. S., Sec. 3714.) The officer who took the deposition acted as the attorney for Mrs. Holgate, and was, therefore, disqualified from acting. He was not commissioned by the court, as provided by law. (R. S., Sec. 3713.)

Over repeated objections of defendant, Downer, that the same was incompetent, irrelevant and immaterial, Roannah M. Holgate, who testified in her own behalf, was permitted to testify that she had been engaged in keeping a boarding house in Deming, New Mexico; that she made money in that business; that she gave a portion of the same to Henry Holgate to invest for her; that the same was invested in the meat market business at Sheridan, Wyoming; that she paid Henry Holgate for his services in the firm of Downer & Holgate; that the real estate in controversy was purchased with the moneys arising out of the profits of the firm of Downer & Holgate; that the accounts charged to Henry Holgate in the books of the firm were taken into account in her settlements with Downer; that Henry Holgate acted for her in all the business of the said firm and signed certain papers and checks as her agent; that the money invested in the firm of Henry Holgate belonged to her; that the moneys deposited in various banks in the name of Henry Holgate belonged to her; that she paid certain persons to make sales of firm property; that neither Henry Holgate nor Downer had any interest in the realty claimed by her; that the deeds to the realty were for her benefit, concerning what she did with moneys being the profits of the firm business; that a portion of the money invested in the business by Henry Holgate was realized by her in the sale of a piano.

Mrs. Holgate did not plead a partnership agreement with Downer, or with Downer, Raithel & Company; nor did she at any time testify to any partnership agreement. She simply testified that she was a member of the various firms

pleaded by Downer in his cross-petition. Now, unless she was a partner, and she could be none unless she had some agreement with Downer to enter into a partnership, most, if not all, of the above testimony, or of the testimony on the above matters, should have been excluded, on the ground alone that she proved no partnership.

We do not believe that any authority can be found to sustain a contention that a partnership between parties can arise by operation of law. It must rest upon voluntary contract. It is true that as to third persons, one may, by his acts, render himself liable as a partner, although not one in fact, and this court has so held. (Rainsford v. Massengale, 5 Wyo., 1.)

But *inter se* there must be a lawful agreement. And, like other contracts, it must be founded upon a consideration either of mutual promises or contributions. (1 Bates on Partnership, Secs. 2, 3, 78.)

The fact that she testified that she was a partner would not make her such, because it would be a conclusion. She should have testified to facts from which the court could determine whether a contract of partnership existed between her and Downer. (Durlacher v. Frazer, 8 Wyo., 58; Lawrence v. Thom, 9 Wyo., 414.)

Her testimony that neither Downer nor Henry Holgate had any interest in the realty claimed by her was both incompetent and objectionable, because the question called for an opinion. Nor does it matter nor could be competent or material how Henry Holgate signed checks. And the fact that she paid a person $50 to make a sale of cattle in no sense could make her a partner.

It could make no difference what disposition was made with the profits after being divided. An exhibit offered and admitted shows that on May 20, 1895, $3,068 was deposited in the Bank of Commerce by Henry Holgate, agent. It must have been admitted upon the theory that it was material for the purpose of proving that Roannah M. Holgate was a partner of Downer's. We cannot understand upon what other theory it was offered or admitted.

The admission of immaterial evidence—and especially the repeated admission of the same over objection—must be regarded as prejudicial error. (Bank v. Luman, 5 Wyo., 159; Masteller v. Leavitt (Cal.), 62 Pac., 384; Parke v. Boulware et al. (Idaho), 63 Pac., 1045.)

Mrs. Holgate was cross-examined by plaintiff's counsel, and also by Downer's. On cross-examination by counsel for the latter, she testified that she first learned of the firm of Downer & Holgate in December, 1892—that is, of the firm formed in November, 1892—through a letter written her by Mr. Holgate, informing her that he had invested her money; that she never had a conversation with either Downer or Raithel for the purpose of forming a partnership; that all the knowledge she had of the investment of her money was what Mr. Holgate had written her. A motion was then interposed to strike out all the evidence of the witness in reference to the terms of partnership of Downer & Holgate on November 22, 1892, for the reason that it was incompetent, irrelevant and immaterial, which motion was denied. An additional reason assigned was that the same was hearsay. On further cross-examination she testified that all the knowledge she had of the formation of the firm of Downer, Raithel & Company was what Henry Holgate wrote her. Motion was made to strike out of her evidence all testimony in reference to the formation of the said last mentioned firm.

She further testified on cross-examination that Raithel went out of the firm in the spring of 1894; that she never talked the matter over as to his going out of the firm with Raithel and Downer, and that all she knew about it was what Henry Holgate told her. Motion was then made to strike out all testimony of the witness in reference to the dissolution of the firm of Downer, Raithel & Company for the same reasons as above, and the same was denied.

She also testified, on further cross-examination, that all she knew as to the payment of $1,000 to Raithel for his interest is what Henry Holgate told her; that Henry Hol-

gate told her that he had invested $700 given him by her in the meat market business; that she knew that the real estate was purchased with the profits of the meat market business, because Henry Holgate told her; that she never had any conversation with Downer to form a partnership after Raithel went out of the firm, and that all she knew about the formation of the firm of Downer & Holgate at that time was what Henry Holgate told her; that the profits divided in 1895 amounted to $6,000, $3,000 of which was paid over to Henry Holgate as her agent, and that she knew what the profits were, because Henry Holgate told her; that the live stock on hand in November, 1894, was disposed of to Wood Bros., as she was informed; that her husband informed her that he had invested some money in Idaho, and purchased property there. Motions were made from time to time, as the matters were disclosed, to be based on hearsay, as well as objectionable on other grounds, to strike out all her testimony in reference to said matters, for reasons stated as above, and the motions were all denied.

It requires no citation of authority to show that all of the testimony should have been stricken out for the reasons urged. The statements made by Mr. Holgate to Mrs. Holgate were not admissible. It could not be competent evidence, nor admissible for any purpose. It was all hearsay. The refusal of the court to strike out the evidence was prejudicial error.

The ownership of the property involved, claimed by and adjudged to Roannah M. Holgate, could only have arisen by reason of her being a partner in the various firms, and the evidence is not only insufficient, but that there is a total lack of evidence to sustain the finding that she was a partner.

James P. Byron testified that he knew Mrs. Holgate, and that she kept a boarding house at Deming, New Mexico, but he did not know whether she had accumulated any money in that business.

Charles A. Ament testified that he knew that Mrs. Hol-

gate kept a boarding house at Deming; that it was a select one, but did not know that she made any money in that business.

Ed Merz testified that Mrs. Holgate kept a first-class boarding house at Deming from 1887 until she left there, but does not know whether she made any money in the business.

Frank Thurmond testified that Mrs. Holgate kept a boarding house at Deming; that he and his wife boarded there, and that he paid her $80 a month for room and board, and that he does not know how much money she made.

J. G. Cosslett testifies that he became acquainted with Mr. Holgate in the fall of 1892, and with Mrs. Holgate in the fall of 1893; that he knew the firm of Downer & Holgate in the fall of 1892; that the members of the firm were George W. Downer and Roannah M. Holgate; that Mrs. Holgate invested the sum of $500 at the commencement of the firm; that they purchased the business from Skinner & Wood; that he worked for the firm in 1893 until close of business in 1895; that he was paid wages for buying stock, and also received a share of the profits; that the real estate occupied by Mrs. Holgate was purchased by Downer and Mrs. Holgate; that the business property was purchased by Mrs. Holgate and Downer from Skinner & Wood, and that each paid one-half of the purchase price; that Mrs. Holgate and Downer purchased the real estate in the Grinnell addition—each paying one-half; that Henry Holgate had no interest in the firm or property; that Henry Holgate never invested any money in the firm; that he was present at the settlement in the spring of 1895, and that the partnership debts of the firm were then settled and the partnership dissolved; that in December, 1894, he sold some personal property belonging to the firm, and that Mrs. Holgate paid him $50 for his services; that the business of the firm was profitable, and that Mrs. Holgate never invested any money belonging to Henry Holgate.

George H. Bloom testifies that Mrs. Holgate kept board-

ers in Deming; that he and his wife boarded with her and paid her $60 a month; that Henry Holgate had no means of his own when he left Deming; that Mrs. Holgate kept the best class of boarders; that he knew the firm of Downer & Holgate, but not while they were in business, because they had sold out before he came to Sheridan; that the firm of Downer & Holgate consisted of George W. Downer and Roannah M. Holgate; that Henry Holgate represented the latter's interest; that Mrs. Holgate's money was used in the business; that he does not know how much money Mrs. Holgate invested, but that he bought a piano from her and paid her $200; that Downer & Holgate were engaged in buying and selling cattle and other speculation until July 22, 1895; that settlements were had between Downer and Mrs. Holgate in March and July, 1895; that at that time all profits were divided; that he constructed the house occupied by Mrs. Holgate; that in July the bills were brought in and the matter settled up for the building of the house—each paying one-half; that he does not know whether Henry Holgate ever paid him any money for the construction of the house, but that if he did he paid it as agent; that the settlement for the construction of the house was made on July 22, 1895, with George Downer, Roannah M. Holgate and Henry Holgate; that he does not know whether Henry Holgate ever had any interest in the firm of Downer & Holgate, but he understood that he was acting solely for Mrs. Holgate; that at the settlement there was no other talk between any of them, except that Mr. Downer and Mrs. Holgate were the members of the firm; that he had no business with the firm other than the building of the house, and was familiar with them and acquainted with them as a firm from March, 1895, until July, 1895, and that he knew of nothing further of benefit to Mrs. Holgate.

John A. Raithel testifies that he knew the Holgates since 1882; that he was connected with wholesale and retail butcher business at Sheridan, Wyoming, with George Downer and Roannah M. Holgate, under the firm name of

Downer, Raithel & Company; that Henry Holgate was
never a member of the firm; that he was informed that
George Downer and Mrs. Holgate were the members of
the firm of Downer & Holgate, and that he does not know
whether Henry Holgate was ever a member of the firm of
Downer & Holgate. The latter also testified that Mrs. Hol-
gate invested $1,000, or possibly a little more, in the firm
of Downer, Raithel & Company, and that the business was
profitable.

Eleven checks were introduced by Mrs. Holgate, dated
in 1894 and 1895, signed, as she claimed, "Downer & Hol-
gate, H. H., Agt.," drawn on the First National Bank of
Sheridan by Henry Holgate. She also introduced a lease
made by George Downer and her to Cosslett Bros., dated
December 1, 1895, leasing the meat market property, slaugh-
ter house and some personal property to the latter for one
year. Another lease made by her and Downer to Charles
H. Reynolds & Company, dated December 1, 1897, leasing
the same property, except the slaughter house not included,
to the latter for six months. She also introduced in evidence
six checks, all dated in 1895, signed "Henry Holgate, H.
H., Agt.," drawn on the Bank of Commerce of Sheridan,
Wyoming, in favor of various persons named in the checks.
A lease was also introduced by her, made by Downer and
herself to Woods, Woods & Jacobs, dated December 1st,
1894, leasing to the latter the meat market property, also a
slaughter house and some personal property for one year.
Also a lease made by the same parties to Charles H. Rey-
nolds, dated either December 1, 1896, or 1897, leasing to
the latter the meat market property and personal property
from the above date to either December 1st, 1897, or June
1st, 1898.

Without going into detail, we are supported by the record
in stating the testimony offered by Downer sustains the
allegations of his cross-petition. He positively denies that
Roannah M. Holgate ever entered into any partnership
with him, or with him and Raithel, but that Henry Holgate
was one of the members of the firm.

Mr. Downer testifies that the first business transaction of the firm of Downer & Holgate in 1892 was the purchase of the business from C. B. Stroud, and that a written contract was entered into between the firm and Stroud, which was offered in evidence by the plaintiff.

The contract is signed by C. B. Stroud and Henry Holgate and George W. Downer, and the consideration expressed, and which Downer testifies was paid, is $800. Of that sum Downer paid $525, Henry Holgate paid a portion and $135 was charged to Henry Holgate, as Downer testifies and as the books of the firm show.

He also testifies that the real estate was purchased with the firm moneys, and that the profits were divided from time to time between him and Mr. Holgate, and that the last business venture was a continuation of their cattle business, which they had carried on from time to time. An examination of Downer's testimony also discloses that as to some of the real estate payments were made from time to time, instead of in cash, as pleaded by Mrs. Holgate in her cross-petition.

He further testifies that the deed from Whitney was made to Downer & Holgate, composed of himself and Henry Holgate.

The deeds from Skinner & Wood and Winterling and Baird to Downer and Mrs. Holgate of a part of the real estate in controversy were introduced in evidence by Downer. Also certain checks of Downer & Holgate, signed by Holgate, without affixing "agent."

In regard to the leases made by him and Mrs. Holgate, he testifies that Henry Holgate informed him that Mrs. Holgate could sign in his place, and that he also knew at that time that the title was in the name of Mrs. Holgate; that the leases were signed when Mr. Holgate was away.

Harry Woods, who testified for plaintiff and also for Downer, testified that the deal for the transfer for the real estate conveyed by him and Skinner was made with Downer and Henry Holgate, and that he did not know Mrs.

Holgate; that part of the consideration was paid by Downer & Holgate, and that Mrs. Holgate never paid any consideration; that part was paid by Diefenderfer; that the principal part of the deal was made with Mr. Holgate.

Mr. A. S. Burrows, cashier of the First National Bank of Sheridan, testifies that he was acquainted with the firm of Downer & Holgate when it was engaged in business at Sheridan; that the firm was composed of George Downer and Henry Holgate, and that Mrs. Holgate never had any business transactions with the bank in relation to said firm.

A number of checks of Downer & Holgate and Downer, Raithel & Company were introduced in evidence, showing payments to the building association which held incumbrance on part of the real estate. The check for $550 paid Whitney by the firm of Downer & Holgate for the real estate purchased by the firm from Whitney was introduced in evidence by Downer.

It clearly appears from the foregoing that Mrs. Holgate wholly failed to make out a case, and that Mr. Downer should have prevailed. The testimony of Cosslett and Bloom is unreasonable and unreliable. Mr. Cosslett has no difficulty in testifying about matters which in the nature of things were not within his knowledge.

Downer was not estopped on account of the name of Mrs. Holgate being in the deeds. (107 N. Y., 310; 14 N. E., 269.)

The testimony of Mr. Downer shows that Mr. Holgate withdrew $1,500 more than his share from the firm. That money was withdrawn from a partnership fund. There is property out of which Downer is entitled to be reimbursed. The property ought not to be adjudged to one who was not a partner, and thus defeat Mr. Downer in his efforts to secure reimbursement out of partnership property, which property, according to the great preponderance of the evidence, was acquired by George Downer and Henry Holgate out of profits realized by them in carrying on a meat market and cattle business. But, even conceding, for the sake of argu-

ment, that Mr. Downer failed to make out a case, there was no authority for entering a judgment for Mrs. Holgate and adjudging $32.32 costs in her favor and against Mr. Downer.

*Gibson Clark,* for defendant in error.

In this court no question as to the rights of any creditor of Henry Holgate is involved. The plaintiff in error is not here asserting any right as a creditor of Henry Holgate, but simply claiming that as a partner of Holgate he is entitled to have certain property declared to be the property of the partnership, to have the partnership dissolved, an accounting between the partners, and a distribution of its assets. The partnership firm of Downer & Holgate was formed and commenced, a meat market business, on or about the 25th day of November, 1892, and continued in existence until about the 2d day of August, 1893, at which latter date it was dissolved and full settlement made between the partners of all their transactions, except, as he claims, as to certain real and personal property in said answer afterwards mentioned. During the continuance of this partnership and on March 8th, 1893, the members of the firm bought and paid for out of partnership funds one of the pieces of property herein involved, and took a deed conveying the same to George W. Downer and Roannah M. Holgate, and the title thereto has remained as fixed by that deed to the present time. Upon these premises was located the shop in which the business of the firm was carried on. On the 2d day of August, 1893, the firm of Downer, Raithel & Company was formed, composed of the members of the original co-partnership of Downer & Holgate and one John A. Raithel, and this new firm of Downer, Raithel & Company carried on the business until March 6, 1894, when it was dissolved and its affairs settled up.

It is not pretended in this cause that the firm of Downer, Raithel & Company ever at any time bought or acquired any kind of interest in the real estate. At the time of the formation of this firm, and at all times during its existence,

the title to the property was in George W. Downer and Roannah M. Holgate. If Henry Holgate was a member of the firm of Downer & Holgate, it is then certain that Raithel did not, by buying an interest in that firm, acquire any kind of interest in the property in question.

On the 6th day of March, 1894, Raithel withdrew from the firm of Downer, Raithel & Company, and its affairs were then settled up, and thenceforth the business was carried on under the firm name of Downer & Holgate.

On November 30th, 1894, the firm of Downer & Holgate went out of the meat market business, and on December 1st, 1894, George W. Downer and Roannah M. Holgate leased the premises where the business had been carried on to other parties for the term from December 1st, 1894, to December 1st, 1895. This lease also included a slaughter house and the personal property mentioned in Downer's cross-petition; and the meat market business was on said day closed up and settled in full, and a full settlement had of all their transactions, excepting only, as Downer claims, they did not divide the property.

On December 5th, 1894, the members of the firm bought and paid for out of partnership funds another tract of land. The conveyance to this property was taken in the name of "Downer & Holgate," and the title thereto has remained as fixed by such deed. This property consisted of a vacant lot, and, so far as appears from the evidence, was never in any manner used for any of the purposes of the partnership.

On February 20th, 1895, the members of the firm bought and paid for out of partnership funds another tract, and took a deed conveying the same to George W. Downer and Roannah M. Holgate, and the title thereto has since remained as fixed by said deed. Soon after the date of this purchase, just when does not appear, but probably in March, 1895, certainly as much as eighty-three working days prior to July 20, 1895, they commenced the erection of a dwelling house upon these premises, which house was completed in July, 1895, and ever since has been used as a residence by Mrs. Roannah M. Holgate and her family.

In April or May, 1895, a settlement was had of the business of the firm, at which were present George W. Downer, Henry Holgate, Roannah M. Holgate, one George H. Bloom and one J. G. Cosslett. Upon this settlement there was found to be about $6,000 in cash on hand belonging to the firm, and this was divided between the two members, and the amount which either Henry Holgate or Roannah M. Holgate received upon settlement and division of assets was $3,068, whch was afterwards deposited in the Bank of Commerce to the credit of Henry Holgate, agent. This settlement included everything excepting only the bills for the construction of the dwelling house, which was then not completed; and, as claimed by Downer, excepting that there was no division of the real and personal property mentioned in his cross-petition.

On July 22d, 1895, a further settlement was had, at which time the bills for the construction of the house were brought in and fully settled up, and everything relating to the partnership was wound up, excepting only, as claimed by Downer, that the real estate and personal property mentioned in his cross-petition was not divided, George Downer, Henry Holgate, Roannah M. Holgate and George Bloom being present at this settlement.

After this last settlement, and in July, 1895, Henry Holgate left Wyoming and went to Idaho, where he remained until January, 1896, when he returned to Sheridan. There is no pretense or claim that his visit to Idaho was upon the business of the firm.

During this period from July, 1895, to January, 1896, there were no business transactions of any kind between George Downer and Henry Holgate.

Upon Henry Holgate's return in January, 1896, and prior to the Kirby-Senff matter, hereafter mentioned, there were no business transactions of any kind between him and Downer, excepting only that they became interested in some mining claims and did some prospecting for mines; nor did they at any time between July, 1895, and July, 1896, transact

or carry on any business of any kind in the way of buying or selling cattle or conducting a meat market, and, with the exception of said Kirby & Senff contract, all the business of the firm of Downer & Holgate had been fully settled.

The Kirby-Senff transaction, which is the only unsettled matter between Downer and Henry Holgate, arose as follows :.

On July 14th, 1896, nearly a year after the termination of the business of Downer & Holgate, Henry Holgate and Arthur Senff entered into a contract wih J. I. Kirby to sell and deliver to the latter 200 head of cattle for the price of $3,400, to be delivered September 5th, 1896, at Aberdeen, Montana. Upon this contract Kirby advanced the sum of $1,500, and to secure himself he took a bond from Henry Holgate and Arthur Senff, as principals, and George Downer, as surety, in the penal sum of $3,400. Whether before or soon after the making of this contract and bond does not appear, but not later than July 16, 1896, George Downer became interested with Holgate & Senff in this contract, and added $1,000 to the amount advanced by Kirby, and deposited the whole sum, to-wit, $2,500, in the First National Bank of Sheridan on July 16th, 1896, to the credit of Downer & Holgate.

Thereafter Henry Holgate drew cheks against said deposit to, the amount of $1,675, applying $1,650 thereof to his personal use, and paying $25 thereof to Arthur Senff, but did not apply any portion of it towards carrying out the provisions of the contract. With the greater part of the sum so drawn out, he left the country, and has not since been heard from.

On, July 31st, 1896, George Downer drew out from said deposit the sum of $825, and to that extent repaid himself. Thereafter, it appears, he settled with Kirby. How much he paid him does not appear, but it is, we think, fair to presume that he paid him the amount advanced, $1,500.

It is the amount due from Henry Holgate to George Downer upon this transaction, and this alone, which he

seeks to fasten as a charge upon the property involved in this proceeding.

There is no pretense that there was ever at any time prior to the Kirby-Senff transacton any equities growing out of this partnership business in favor of Downer; nor is there any pretense or claim that there was at any time after the completion of the dwelling house in June or July, 1895, a single dollar of partnership indebtedness unpaid. On the contrary, Downer's own testimony is clear and explicit, and not disputed, that all the business of the firm, outside of the Kirby-Senff matter, was fully settled.

*Such being the case, we insist that, as a matter of law, the real estate involved in this cause cannot be regarded or considered partnership property, but that it was held and owned by these parties, not as partners, but simply and only as tenants in common,* each one of the tenants owning and holding his or her share of the property absolutely free and clear of any claim of the others in or to it. (Spurck v. Leonard, 9 Ill. App., 174; Ligare v. Peacock, 109 Ill., 94; 3 Kent Comm., 53; Story on Partnership, Sec. 280; Lindley v. Davis, 14 Pac., 717; 2 Jones on Real Property, Sec. 1831; Washburn on Real Property, pp. 438, 439; Devlin on Deeds, Sec. 208.)

It is an almost uniformly recognized rule that where real estate is purchased by a partnership with partnership funds, and even used for partnership purposes, and a deed taken conveying the estate to the partners individually, or to them individually but as partners, or to them in their partnership name, they hold the title not as partners, but as tenants in common with all the incidents appertaining to such tenancy, subject only to this limitation, that in equity these tenants in common will hold their respective estates impressed with a trust in favor of the creditors of the firm and in favor of the other members of the firm to the extent of any equities existing in their favor. If, however, there are no firm debts, and no equities in favor of the other partners, then, and in such case, they hold their respective estates simply and only

as tenants in common. (Blanchard v. Floyd, 9 So., 418; Oil Co. v. Henshaw, 7 So., 760; Dyer v. Clark, 5 Metc., 562; Gardner v. Richardson, 11 Mass., 469; McAuley v. Fulton, 44 Cal., 355; Smith v. Jackson, 2 Edw., Ch. 28; 1 Parson's Cont., 148-153; Coles v. Coles, 15 Johns., 159; Anderson v. Tompkins, 1 Fed. Case No. 365; Shearer v. Shearer, 98 Mass., 107; Prin v. Hicks, 14 Fla., 565; Russell v. Miller, 26 Mich., 1; Martin v. Morris, 62 Wis., 418; 1 Bates Part., Sec. 297; Lefevre's Appeal, 69 Pa., 122; Ridgway's Appeal, 15 Pa., 177; Lang v. Waring, 25 Ala., 625; Caldwell v. Parmer, 56 Ala., 405; Bank v. Mixley, 13 Pa., 544; Brewer v. Browne, 68 Ala., 210; Riddle v. Whitehill, 135 U. S., 621.)

In concluding this branch of our argument, we beg to call the attention of the court to the fact that the Kirby-Senff cattle deal has once before been before this court, in the case of Holgate v. Downer, 8 Wyo., 334. In that case it will appear from the opinion that the deal was not a continuation of the old business; no such claim was made.

There had been a full accounting between the partners, so that there is now no ground upon which to base a decree for an accounting; and even if there had been no accounting, in such case an accounting, if decreed, would and could embrace only such matters as existed between them at the time of the dissolution. (Dyer v. Clark, 5 Metc., 562; Ligare v. Peacock, 109 Ill., 94.)

It is not the law in this State that depositions cannot be taken upon written interrogatories except when the court appoints a commissioner for such purpose under the provision of Section 3714, Revised Statutes. It is a matter of every-day practice to take depositions in this way, when taken simply upon notice. Admitting that the notary did propound the written interrogatories to the deponent, it does not follow that he was the attorney for the defendant, or in any wise interested in the cause. There is no proof in the record that the facts stated in the motion to suppress are true. The affidavit supporting the motion to suppress

does not state that the matters therein stated are true, but only that they are believed to be true; and we think the affidavit clearly insufficient, even if the facts constituted grounds for suppressing the deposition. (1 Ency. Pl. & Pr., 321, 322.)

As to the errors complained of in admitting evidence, we think the evidence was clearly competent under the issues presented at the time of the trial. The plaintiff below had alleged that the conveyances to Mrs. Holgate were fraudulent as to the creditors of Henry Holgate, and that he was such creditor; that Mrs. Holgate had paid no consideration for such conveyances, and that they were in effect merely voluntary conveyances from her husband. In order to meet this charge, she had beyond question the right to show that she gave money to Henry to invest for her; that she had been earning money in business; to the fact that she brought money with her to Sheridan, which she invested in the firm of Downer & Holgate; in short, she had the right to testify to any fact which would in the slightest degree tend to show that the conveyances to her were not fraudulent or voluntary. And as to George Downer, any testimony tending, however slightly, to show that she and not Henry Holgate, was a partner in the firm of Downer & Holgate, or of Downer, Raithel & Company, was both competent and material. Under such issues as were presented at the time of the trial, the testimony necessarily takes a very wide range, for the inquiry involves not only ordinary matters of acts and facts, but as well motives and intentions. There might be some ground of complaint if the controversy had simply been between George Downer and Roannah M. Holgate, but such was not the case.

As to the refusal of the court to strike out all the evidence of Mrs. Holgate in reference to the terms of the partnership of Downer & Holgate on November 22, 1892, the motion is uncertain and indefinite. An examination of the witness' testimony will disclose that, while she testified as to the fact of the partnership, she did not testify as to the terms.

As to the motion to strike out Mrs. Holgate's testimony with respect to the formation of the firm of Downer, Raithel & Company, this was not prejudicial error. An examination will disclose that every fact in this connection is shown by the testimony of Downer himself, excepting only the one fact in dispute—was she or was Henry Holgate the partner in the firm of Downer, Raithel & Company? Her testimony as to this fact is fully corroborated by that of John A. Raithel, while that of Downer is not corroborated by that of any other witness.

As to refusing to strike out Mrs. Holgate's testimony as to paying of $1,000 to Raithel for his interest, the ruling was not prejudicial error, because Downer himself had previously testified to the same fact, and there is no sort of dispute or controversy about the fact itself. The testimony of Mrs. Holgate as to giving Holgate $700 to invest in the firm business was competent as far as it went against the plaintiff below; it certainly tended to show, however slightly is immaterial, that the conveyances to her were not without consideration and were not voluntary.

But with respect to all of the averments of error stated in the fifth, to and including the thirteenth paragraphs of the motion for a new trial, they are all based upon the assumption that it was shown upon cross-examination that Mrs. Holgate's knowledge as to the matters concerning which she testified was obtained from Henry Holgate, and consequently her testimony as to those matters was merely hearsay, and hence incompetent, immaterial and irrelevant, and, therefore, the court below erred in refusing to strike out such matters of testimony.

In the view I take of the cause, it seems entirely clear that, outside of the testimony of Mrs. Holgate with respect to the matters complained of, there is sufficient testimony in the record to fully sustain the finding and judgment, and hence it was not prejudicial error to refuse to strike out the testimony complained of, or to admit that complained of in the second and third paragraphs of plaintiff in error's

motion for a new trial, even though the court should be of opinion that the evidence was incompetent. (3 Jones on Evidence, Sec. 900.)

In equity cases it will be presumed that the trial judge disregarded incompetent or irrelevant testimony; and errors in the admission of such evidence do not afford ground for reversal where there is sufficient testimony to support the decree. The fact that incompetent testimony has been received is not sufficient ground for reversing the judgment where the case is tried without a jury. In such case the appellate court will give no weight to such testimony in the determination of the appeal, and will not reverse the judgment on that account. (Ritter v. Schenck, 101 Ill., 387; Dewey v. Allgere, 37 Neb., 6; Frisk v. Reigelman, 75 Wis., 499; Ins. Co. v. Bucksteff, 38 Neb., 146; Kleimann v. Gieselmann, 114 Mo., 437; 2 Ency. Pl. & Pr., 567.)

We have already called attention to certain facts abundantly established by the evidence, which, in our judgment, demonstrate conclusively that, regardless of the question as to the persons composing the several firms of Downer & Holgate, Downer, Raithel & Company, and again Downer & Holgate, the judgment was right and proper, and should not be disturbed.

Under the evidence, there is no way of escaping the proposition that from the times Mrs. Holgate acquired her interest in the property up to the time that Henry Holgate drew the $1,500 check against the Kirby-Senff deposit, there was not at any time a single fact which would have enabled Downer to have asserted even the most shadowy sort of a claim to her interest in the property, even if, as claimed by Downer, Henry Holgate was his partner. This property was at said time, and for nearly two years had been as completely withdrawn from the partnership as would be under any circumstances possible. There can be no sort of question as to the right of one partner to withdraw property from the firm and hold it in severalty, divested of its partnership character, provided that in so doing he does not prejudice or violate his partner's rights.

Again, there is no sort of proof that this property was ever at any time carried upon the firm books as partnership property, or in any manner used as partnership property, or that taxes upon it were paid as upon the partnership property. In short, there are about it none of those facts which are usually relied upon to prove that real estate is partnership property.

We now come to the one fact in the case which is most strenuously contested, to-wit: *Was Henry Holgate a member of the firms of Downer & Holgate and Downer, Raithel & Company, and again Downer & Holgate, or was Roannah M. Holgate a member of said firms?*

We believe that the evidence not only fully supports the finding and judgment of the court, but also that any other finding or judgment would have been against the great weight of the testimony. (Counsel here discussed the evidence at some length and referred to it in detail.)

Knight, Justice.

The cause of action in this case, as originally brought, was upon a judgment obtained by the First National Bank of Deming against defendant in error, Henry Holgate, in New Mexico, the facts being, as claimed, that, after said judgment was rendered against said Henry Holgate, who at the time was wholly insolvent, he entered into collusion with the defendant, Roannah M. Holgate, his wife, and removed to this State and purchased from the plaintiff in error here an interest in a meat market, said purchase, or the record evidence thereof, having been designedly and with intent to defraud made in the name of the said Roannah M. Holgate, his wife, when, in truth and in fact, she, the wife, never paid any valuable consideration therefor, and the prayer in said original action was, that certain real estate, or a half interest therein, which had been acquired by the proceeds of said partnership of Downer & Holgate, be declared the sole property of said Henry Holgate, and that the said Roannah Holgate be declared as holding the

record title to the same in trust for the said Henry Holgate and his said judgment creditors. The plaintiff in error, George W. Downer, who held an undivided one-half interest in the same property, was also made defendant, that he might protect his undisputed interest in said property.

The record shows at the time of the commencement of said action Henry Holgate had left the State and deserted his family, who were occupying a part of the realty sought to be affected by the proceeding as a homestead, and said Henry Holgate failed to answer in said cause. Roannah M. Holgate answered that the money used in the original purchase was her money, earned by her in the keeping of a boarding house and the proceeds of the sale of her piano, and that the same was intrusted to the said Henry Holgate, that he might come north and invest the same for her and in her name in the purchase of a market such as was purchased, he, the said Henry Holgate, being a butcher and market man by trade. In passing, it might be stated that the allegations of these conditions as made were supported by evidence, and the court found the same to be true.

Said George W. Downer, as defendant in said action, answered, admitting the co-partnership of Downer & Holgate, and alleged that the Holgate in said firm was said Henry Holgate, and not said Roannah M. Holgate, as claimed by her, and said George W. Downer at the same time filed his cross-petition asking the court to find and decree that the real estate held by said Roannah M. Holgate, or the undivided interest therein, be declared the property of said Henry Holgate, and subject to a certain claim of said George W. Downer against said Henry Holgate arising out of certain dealings between them as partners in the said market business before described.

To this cross-petition the said Roannah M. Holgate answered that the dealings out of which the claim of said Downer arose were after the partnership of Downer & Holgate had been dissolved and settled, excepting the division of the real estate here in controversy and a small

amount of market fixtures and utensils included in a lease made and executed by said George W. Downer and said Roannah M. Holgate as partners of the premises formerly occupied by them as partners, and being a part of the real estate here in controversy; and said Roannah M. Holgate, answering further, alleged that the indebtedness from said Henry Holgate to said George W. Downer, if any, grew out of a cattle deal in which others than said Downer and said Henry Holgate were partners, to which she, the said Roannah M. Holgate, had at all times been a stranger, and the trial court found, upon the issue thus joined, for the said Roannah M. Holgate, and it is upon the latter finding and judgment that this case comes for review, the original plaintiff failing to prosecute an appeal as hereinbefore alleged.

We have examined the many errors claimed to have occurred at the trial of this case, and reviewed the evidence and authorities, and have failed to find any reason why the judgment arrived at and announced by the honorable trial judge should be disturbed.

On the contrary, we are of the opinion that the conclusion arrived at by this court in a former case between the same parties now remaining where the cause of action was the same, viz., an indebtedness from Henry Holgate to said George W. Downer on account of the same cattle deal, were correct, as viewed in the light of the evidence in this case, and we will quote only a part as giving some of the reasons then and now: "It is impossible to connect the transaction of July, 1896, between Downer and Holgate with any former dealings between them. There is absolutely nothing in the evidence which shows that they were at all related. The contemplated purchase of cattle stands out, so far as appears from the record, entirely independent of any previous business in which they may have been jointly or separately interested. The uncontradicted testimony of the defendant (George W. Downer) shows clearly that Holgate was to contribute to the joint capital to be employed in the cattle purchase, and he was personally to attend to

the buying of the cattle. Instead of doing either, he absconded and abandoned the proposed enterprise. He did not devote his money, nor any part of it, to the prosecution of the business, nor for the joint benefit of the parties. He did not buy the cattle as contemplated, nor any of them." (Holgate v. Downer, 8 Wyo., 334.)

We find no reversible error of which this plaintiff in error, George W. Downer, or anyone else, has cause to complain.

The findings and judgment of the District Court are in all things affirmed.                                    *Affirmed.*

CORN, C. J., and POTTER, J., concur.